# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

*In re Akorn, Inc. Data Integrity Securities Litigation*

Civ. A. No. 1:18-cv-01713

Hon. Matthew F. Kennelly

# LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LIMITED RELIEF FROM THE PSLRA DISCOVERY STAY

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 4 |
| III. | ARGUMENT | 6 |
| | A. The Limited Request Is Consistent With The Purposes Of The PSLRA | 6 |
| | B. The Limited Discovery Sought Is Sufficiently Particularized And Causes No Undue Burden To Defendants | 8 |
| | C. Lead Plaintiffs Will Suffer Undue Prejudice Absent Limited Relief | 10 |
| | D. Limited Relief Is Necessary To Minimize Any Danger Of Loss Of Evidence | 12 |
| | E. Limited Relief Will Promote Efficiency | 13 |
| IV. | CONCLUSION | 13 |

## TABLE OF AUTHORITES

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
 No. 09 MDL 2058(DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) .......................... 13

*In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*,
 No. 05-MD-1725 (GER), 2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ...................... 8, 9

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
 Nos. MDL-1446, Civ. A. H-01-3624,
 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) .......................................................... 9, 10

*In re FirstEnergy Corp. Sec. Litig.*,
 229 F.R.D. 541 (N.D. Ohio 2004) ........................................................................ 8, 9, 10

*In re Labranche Sec. Litig.*,
 333 F. Supp. 2d 178 (S.D.N.Y. 2004) ......................................................................... 9, 11

*In re Lernout & Hauspie Sec. Litig.*,
 214 F. Supp. 2d 100 (D. Mass. 2002) ..................................................................... 3, 8, 12

*In re Royal Ahold N.V. Sec. Litig.*,
 220 F.R.D. 246 (D. Md. 2004) ........................................................................................ 12

*In re Smith Barney Transfer Agent Litig.*,
 No. 05 Civ. 7583 (WHP), 2006 WL 1738078 (S.D.N.Y. June 26, 2006) .................. 10, 12

*In re Williams Sec. Litig.*,
 No. 02-cv-72H(M), 2003 WL 22013464 (N.D. Okla. May 22, 2003) ............................... 9

*In re WorldCom, Inc. Sec. Litig.*,
 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...................................................................... passim

*Mishkin v. Ageloff*,
 220 B.R. 784 (S.D.N.Y. 1998) ........................................................................................... 8

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 2015 WL 1565462 (E.D. Mich. Apr. 8, 2015) ................................................................. 11

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
 943 F. Supp. 2d 913 (E.D. Wis. 2013) ..................................................................... passim

*Singer v. Nicor, Inc.*,
 No. 02-C-5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ........................................ 11

*Vacold LLC v. Cerami*,
 No. 00 Civ. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ........................... 10

**Statutes**

15 U.S.C. § 77z-1(b)(1) .................................................................................................... 12

15 U.S.C. § 78t(a) ............................................................................................................. 4

15 U.S.C. § 78u-4(b)(3)(B).......................................................................................... 2, 12

15 U.S.C. §§ 78j(b)............................................................................................................ 4

17 C.F.R. § 240.10b-5....................................................................................................... 4

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
     *reprinted in* 1995 U.S.C.C.A.N. 730, 736 ............................................................ 6

Court-appointed lead plaintiffs Gabelli & Co. Investment Advisors, Inc. and Gabelli Funds, LLC (collectively, "Gabelli" or "Lead Plaintiffs") respectfully submit this memorandum in support of their motion for limited relief from the mandatory discovery stay currently in place in this federal securities action (the "Action") under the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

I. INTRODUCTION

Lead Plaintiffs seek relief from the PSLRA discovery stay for the limited purpose of obtaining copies of: (i) documents already gathered, reviewed, and produced by Defendant Akorn, Inc. ("Akorn" or the "Company") to third-party Fresenius Kabi AG ("Fresenius") in connection with the related ongoing litigation (the "Delaware Discovery Materials") in the Delaware Court of Chancery (the "Delaware Litigation"); and (ii) unredacted copies of filings, exhibits, deposition transcripts and trial transcripts in the Delaware Litigation (the "Delaware Trial Materials").

The Action arises from a pervasive fraud at the highest levels of Akorn involving the Company's systemic violations of U.S. Food and Drug Administration ("FDA") data integrity regulations and the efforts of its most senior executives to cover up those violations. A detailed investigation conducted by Fresenius, Akorn's former merger partner before Akorn's fraud derailed the deal, has already revealed that key Akorn executives directed Company employees to submit fabricated clinical drug data to the FDA in order to secure approval of its drugs. Moreover, outside consultants hired by Akorn during the Class Period pointedly warned Akorn that its systemic data integrity violations were so serious that the Company could face criminal liability. Yet, as Fresenius' investigation has revealed, Akorn ignored its consultants' advice, and

---

[1] As Mr. Entwistle advised the Court during the telephonic conference on June 7, 2018, Lead Plaintiffs' counsel provided drafts of these moving papers to counsel for defendants prior to filing, who declined to consent to lifting the PSLRA discovery stay.

1

affirmatively instructed employees to refrain from fixing the Company's data integrity failures. All the while, Akorn and certain of its senior executives (together, "Defendants") made numerous materially false and misleading public statements assuring investors that Akorn complied with FDA regulations and touting the Company's pipeline of new drug applications it had submitted to the FDA. When the truth about Akorn's systemic data integrity failures was finally revealed to the market, the Company's stock price plummeted, collapsing approximately 60% in just two trading days.

The rationale for the PSLRA discovery stay[2] is "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (citing House and Senate conference reports). This rationale does not apply here.

Instead, Lead Plaintiffs' motion fits squarely with Congress' express exception that authorizes courts to permit limited discovery prior to ruling on a motion to dismiss when: (1) "exceptional circumstances exist" such that allowing discovery would not violate the ethos of the PSLRA discovery stay; and (2) "particularized discovery" is necessary to either (a) "preserve evidence" or (b) "prevent undue prejudice" to a party. *See* 15 U.S.C. § 78u-4(b)(3)(B); *see also*

---

[2] The PSLRA provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B).

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913 (E.D. Wis. 2013).

As detailed more fully herein, the PSLRA stay should be modified where, as here:

- Exceptional circumstances exist in that lifting the stay will not burden Defendants. Akorn has already gathered, reviewed and produced all of the requested Delaware Discovery Materials to Fresenius. *See, e.g.*, *Pension Trust*, 943 F. Supp. 2d at 913 ("where the defendants have already gathered and the discovery materials sought . . . the Court finds that exceptional circumstances exist, moving this case outside the intended ambit of the PSLRA discovery stay.");

- Unredacted copies of existing Delaware Trial Materials such as the unredacted complaint are readily available and unredacted versions of materials in the upcoming trial commencing on July 9, 2018 (the "Delaware Trial") will be easily produced to Lead Plaintiffs;

- Any confidential information in the Delaware Discovery or Trial Materials is easily protected by Lead Plaintiffs' agreement to a standard protective order;

- Lead Plaintiffs' request is highly particularized in that it is limited solely to documents that have already been produced in the Delaware Litigation or has been or will be created or submitted in the Delaware Trial;

- Lifting the stay is necessary to prevent undue prejudice. Lead Plaintiffs and the class will suffer undue prejudice if they are denied access to relevant materials central to the common conduct and issues in both the instant case and the Delaware Litigation, as this will prejudice Lead Plaintiffs' ability to make fully informed strategy decisions in the rapidly shifting landscape;

- Lifting the stay is necessary to preserve evidence. Depending on the outcome of the Delaware Litigation in which the Company seeks specific performance, Akorn is a party to a pending merger with Fresenius. Courts have recognized that the potential for loss of evidence is heightened during mergers. *See, e.g.*, *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002) (company's reorganization "raises the added dangers of poorly maintained records and dispersal of key witnesses"). Such risk is particularly acute where, as here, the allegations in this action directly concern Akorn's data integrity; and

- Lifting the stay will promote the efficient resolution of this action. This litigation will involve millions of documents (Akorn has already produced over 3 million documents to Fresenius), complicated privilege issues (the Delaware Chancery Court recently ruled that Akorn had partially waived privilege by having its outside litigation counsel, Cravath Swaine & Moore LLP ("Cravath"), conduct its internal investigation) and lengthy expert discovery. Partially lifting the stay will advance

the discovery schedule in this case and allow Lead Plaintiffs to efficiently determine what, if any, additional discovery they will need after resolution of Defendants' anticipated motion to dismiss the consolidated amended complaint Lead Plaintiffs will file on September 5, 2018.

At bottom, Lead Plaintiffs easily satisfy each requirement for limited relief from the PSLRA discovery stay.

## II. STATEMENT OF FACTS

This Action alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, during the period from March 1, 2017 through February 26, 2018, inclusive (the "Class Period"), Defendants repeatedly misrepresented the Company's compliance with FDA regulations and concealed from investors the fact that the Company's serious violations of those regulations jeopardized its business and its ability to complete a sale of the Company to Fresenius that was announced early in the Class Period. Akorn investors incurred significant losses following a series of disclosures about the Company's regulatory violations, which caused Fresenius to terminate its agreement to buy the Company.

In particular, throughout the Class Period, Akorn and its senior executives represented that Akorn remained in compliance with the Food, Drug and Cosmetic Act ("FDCA"), and that the Company anticipated continued growth based on the likelihood of obtaining approval of new drugs in its pipeline, which was contingent upon this compliance. These representations were particularly important in light of the proposed acquisition of Akorn by Fresenius (the "Merger"), a German drug maker that agreed to buy Akorn for $4.3 billion shortly after the beginning of the Class Period. Indeed, in light of supply disruptions and increasing competition for a number of Akorn's key products, Akorn's ability to obtain FDA approval and bring new drugs to market was

4

critical to Akorn's success and completion of the Merger. In truth, Akorn violated the laws its senior executives represented were critical to its business, putting the Company's prospects and the Merger at tremendous risk.

In this regard, on February 26, 2018, the Company and Fresenius disclosed that the Merger was in jeopardy following allegations from an anonymous whistleblower that had identified serious "data integrity" issues concerning the Company's product-development interactions with the FDA. Fresenius announced that the alleged FDA violations included "***deficiencies and misconduct***" concerning Akorn's drug development process. Following the announcement, Akorn's stock price fell $11.63 per share, or over 38%, declining from $30.28 to $18.65. Several weeks after the end of the Class Period, on April 22, 2018, Fresenius disclosed that it was terminating the merger after its outside experts found "material breaches" of FDA standards and that Akorn's representations that it complied with these laws "were not true." In response to this disclosure, Akorn shares fell another 30%, declining from a close of $19.70 on Friday, April 20, 2018 to a close of $13.05 on Monday, April 23, 2018.

On April 23, 2018, Akorn commenced the Delaware Litigation against Fresenius to bar Fresenius from walking away from the Merger or attempting to sabotage efforts to secure antitrust clearance. The parties were to substantially complete all document production in the Delaware Litigation by May 26, 2018 and trial is set to begin on July 9, 2018.

On May 22, 2018, the Delaware Chancery Court granted in part Fresenius' discovery motion, finding that Akorn partially waived privileged with respect to an investigation concerning the alleged fraud conducted by Cravath. At oral argument on that hearing, Akorn disclosed that it had produced over 3 million documents to Fresenius as part of the Delaware Litigation. Fresenius also conducted 50 interviews with 48 different Akorn employees.

On May 31, 2018, the Court appointed Gabelli & Co Investment Advisors, Inc. and Gabelli Funds, LLC as Lead Plaintiffs in this Action and approved their selection of lead counsel and liaison counsel. (ECF No. 37). While Lead Plaintiffs are closely monitoring the Delaware Litigation, Lead Plaintiffs do not have access to the Delaware Discovery Materials or unredacted versions of the Delaware Trial Materials that are central to the issues in the instant Action.

Lead Plaintiffs have until September 5, 2018 to file an amended complaint. (ECF No. 36).

### III. ARGUMENT

As explained below, all of the relevant factors favor granting Lead Plaintiffs' limited request for relief, as other courts have done under similar circumstances.

#### A. The Limited Request Is Consistent With The Purposes Of The PSLRA

The PSLRA discovery stay seeks to prevent the filing of "strike suits" – frivolous suits initiated in the hope that the high cost of discovery will coerce otherwise innocent defendants to settle. *See, e.g.*, H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736; *WorldCom*, 234 F. Supp. 2d at 306. Further, the stay seeks to prevent "fishing expeditions," where a plaintiff files a frivolous suit and seeks to use discovery to search for a viable claim not alleged in the complaint. *See, e.g.*, S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693; *WorldCom*, 234 F. Supp. 2d at 305. Lead Plaintiffs' suit is not the type of suit targeted by the PSLRA, and allowing the limited relief sought by Lead Plaintiff is consistent with the statute's goals. In addition to the publicly available facts and those uncovered thus far through Lead Plaintiffs' ongoing factual investigation, Lead Plaintiffs' allegations are bolstered by the Verified Counterclaim filed by Fresenius in the Delaware Litigation. Fresenius, based on its review of millions of Akorn documents (the documents Lead Plaintiffs seek by this motion) during due diligence as well as interviews with dozens of Akorn employees, has confirmed that

6

Akorn suffers from serious data integrity issues and has misrepresented its compliance with the FDCA. *See* Defendants' Answer, Defenses and Verified Counterclaim, attached as Ex. A to the Declaration of Andrew J. Entwistle In Support of Lead Plaintiffs' Motion for Limited Relief From the PSLRA Discovery Stay, at Preliminary Statement ¶¶ 1-23 & Verified Counterclaim ¶¶ 4-118.

As Fresenius stated in its Answer, Defenses and Verified Counterclaim, "the record so far reveals blatant fraud at the very top level of Akorn's executive team, stunning evidence of blatant and pervasive data integrity violations, [and] outrageous attempts by and on behalf of Akorn to cover up those violations and misrepresentations[.]" *Id*. at Preliminary Statement ¶ 6. Among other facts, as discussed above, Fresenius' investigation revealed that senior Akorn executives "knowingly directed the submission of fraudulent testing data to the FDA" as "part of a fraudulent scheme that dated back to 2012." *Id*. ¶ 7. Additionally, the investigation uncovered "a series of blistering internal and external audit reports highlighting [Akorn's] data integrity failures." *Id*. ¶ 8. For instance, the investigation revealed that Akorn executives had been warned by Cerulean Associates LLC, an outside consultant, in early 2017 that the Company's "numerous 'critical' data integrity" failures, and "many other 'seriously negligent' and 'deeply troubling' practices," could subject it to criminal liability. *Id*. ¶ 8. Despite these warnings, Akorn executives affirmatively instructed employees to refrain from improving the Company's data integrity. *Id*. at Verified Counterclaim ¶¶ 61-65. Likewise, the investigation showed that Akorn's drug testing data "are replete with alarming signs of systemic wrongdoing." *Id*. at Preliminary Statement ¶ 9. The investigations revealed, for example, that Akorn potentially rigged its drug testing by conducting iterative "trial" tests, which are highly suspect "because they allow companies to 'game' the process by running multiple tests, and submit[ting] only the passing results while discarding the unofficial 'trial' results." *Id*. An examination of just three Akorn sites revealed "tens of

thousands" of such troubling tests. *Id*. In short, Lead Plaintiffs' claims are well-founded, and this case bears no resemblance to the "strike suits" at which the PSLRA's discovery stay is aimed.

Because Lead Plaintiffs seek only copies of materials that have already been disclosed to Fresenius or are readily available trial transcripts and filings, maintaining the absolute stay as to these documents serves no legitimate PSLRA purpose. Courts recognize that "where the defendants have already gathered and the discovery materials sought . . . the Court finds that exceptional circumstances exist, moving this case outside the intended ambit of the PSLRA discovery stay." *Pension Trust,* 943 F. Supp. 2d at 915; *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) ("maintaining the discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA."); *see also In re Delphi Corp. Sec., Derivative & "Erisa" Litig.*, No. 05-MD-1725 (GER), 2007 WL 518626, at *8 (E.D. Mich. Feb. 15, 2007) ("[M]aintaining the discovery stay as to materials already provided to the federal authorities and to the Unsecured Creditors Committee does not further the policies behind the PSLRA.").

On the other hand, granting the limited relief requested serves the legitimate purpose of promoting efficiencies in this action.

### B. The Limited Discovery Sought Is Sufficiently Particularized And Causes No Undue Burden To Defendants

To satisfy the PSLRA's particularity requirement in connection with modifying the stay, "the party seeking discovery under the exception must adequately specify the target of the requested discovery and the types of information needed." *Lernout*, 214 F. Supp. 2d at 108 (citing *Mishkin v. Ageloff*, 220 B.R. 784, 792-95 (S.D.N.Y. 1998)). Courts routinely hold that a request to lift the stay is sufficiently particularized where it is limited to a closed universe of materials that either has been produced, or will be produced, to government investigators and/or to other parties

8

in related matters. *See, e.g.*, *Pension Trust*, 943 F. Supp. 2d at 915 (finding plaintiffs' request is particularized when "it is limited solely to relevant materials that have already been produced in other proceedings."); *WorldCom*, 234 F. Supp. 2d at 306 (lifting stay as to materials produced to public agencies in related proceedings); *FirstEnergy*, 229 F.R.D. 542 (lifting stay as to documents produced to governmental entities); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, Nos. MDL-1446, Civ. A. H-01-3624, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002) (lifting stay as to materials already made available to numerous governmental entities and others); *In re Williams Sec. Litig.*, No. 02-cv-72H(M), 2003 WL 22013464, at *3 (N.D. Okla. May 22, 2003) (same); *Delphi*, 2007 WL 518626, at *4-5 (lifting stay as to materials produced during the course of investigations).

In *Pension Trust*, for example, where plaintiffs sought access to documents produced in the course of government investigations and other related proceedings, the court found that plaintiffs' claims were sufficiently particularized. 943 F.Supp.2d at 915. Judge Stadtmueller found that documents produced in other litigations are a "relatively-limited amount of materials" that are "subject to readily definable constraints." *Id.*

Here, as in *Pension Trust*, Lead Plaintiffs only seek access to a specific and circumscribed universe – materials that have been produced in a parallel proceeding. As explained in *WorldCom*, *FirstEnergy*, *Delphi*, and other cases, Lead Plaintiffs' request for access to these limited materials is sufficiently particularized.

Moreover, in "deciding whether or not to lift the PSLRA's discovery stay, 'it is customary to consider whether a production request places an undue burden on the party from which it is requested.'" *In re Labranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (quoting *WorldCom*, 234 F. Supp. 2d at 306). When the defendant will not be burdened by the requested

9

discovery, "defendants in such circumstances may be much less likely to feel the pressure to engage in a settlement of meritless claims." *Pension Trust*, 943 F.Supp.2d at 915. As noted above, and as various courts have explained, granting securities plaintiffs access to materials already collected and produced to other parties imposes virtually no additional burden on any producing parties. *See, e.g.*, *WorldCom.* 234 F. Supp. 2d at 306 (no burden where materials already gathered and produced); *FirstEnergy*, 229 F.R.D. at 545 (same); *Enron*, 2002 WL 31845114, at *2 (same). As the *Enron* court summarized: "In a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse." 2002 WL 31845114, at *2; *see also FirstEnergy*, 229 F.R.D. at 545; *WorldCom*, 234 F. Supp. 2d at 306. Accordingly, allowing Lead Plaintiffs to have access to materials already gathered and produced in the Delaware Litigation imposes virtually no additional burden on Defendants, and this factor weighs in favor of granting Lead Plaintiffs' requested relief.

**C. Lead Plaintiffs Will Suffer Undue Prejudice Absent Limited Relief**

Courts may lift the mandatory PSLRA discovery stay if doing so is necessary to "prevent undue prejudice to plaintiffs." *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 1738078, at *1 (S.D.N.Y. June 26, 2006). "Undue prejudice in the context of a discovery stay means improper or unfair treatment amounting to something less than irreparable harm." *Smith Barney*, 2006 WL 1738078, at *2 (quoting *Vacold LLC v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001)) (internal quotation marks omitted). As noted in *Pension Trust*, courts have found undue prejudice is present where the defendants are "in the midst of reorganizing, merging or being acquired; where the defendants have submitted documentation in federal investigations; or where the defendants faced separate lawsuits." 943 F. Supp. 2d at 916 (internal citations omitted). All three situations are present here.

10

Courts have repeatedly found that securities plaintiffs would suffer undue prejudice if they were denied access to materials provided to government investigators and other litigants, as the informational disadvantage would prejudice their ability to make strategy decisions in a rapidly shifting landscape. *Pension Trust,* 943 F. Supp. 2d at 916 (collecting cases where courts have found undue prejudice because securities plaintiffs are at an "informational disadvantage" when documents are produced to plaintiffs asserting different claims or government investigators); *see also, New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015); *Singer v. Nicor, Inc.*, No. 02-C-5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) ("Plaintiffs here may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have, during the pendency of the motion to dismiss").

The court in *LaBranche* explained the prejudice facing securities plaintiffs under these circumstances:

> Lead Plaintiffs must now determine their litigation strategy, principally whether or not to seek an early settlement to benefit the class without further expense. The requested discovery is essential to determine that strategy and to assist in formulating an appropriate settlement demand. The Lead Plaintiffs will suffer undue prejudice in having to defer such decisions. 333 F. Supp. 2d at 184.

This threatened prejudice is even greater here because Akorn is in the midst of potentially being acquired. If a "[securities lead plaintiff] must wait until the resolution of a motion to dismiss to obtain discovery and formulate its settlement or litigation strategy, it faces the very real risk that it will be left to pursue its action against defendants who no longer have anything or at least as much to offer." *WorldCom*, 234 F. Supp. 2d at 306.

In sum, partial relief from the PSLRA's stay of discovery will protect Lead Plaintiffs and the putative class it represents from undue prejudice. With access to the same materials already provided to other interested parties, Lead Plaintiffs will be able to plan its litigation strategy.

### D. Limited Relief Is Necessary To Minimize Any Danger Of Loss Of Evidence

In addition to preventing undue prejudice, the PSLRA also authorizes a court to lift the discovery stay to "preserve evidence." 15 U.S.C. §§ 77z-1(b)(1) & 78u-4(b)(3)(B); *Smith Barney*, 2006 WL 1738078, at *1.

As courts have recognized, the potential for loss of relevant evidence is heightened during acquisitions and mergers, such as the pending acquisition of Akorn by Fresenius. Noting the inherent dangers of loss of evidence in reorganizations, courts have lifted the discovery stay under circumstances similar to those here. *See, e.g.*, *Lernout*, 214 F. Supp. 2d at 108 (company's reorganization "raises the added dangers of poorly maintained records and dispersal of key witnesses"). Moreover, the issues in the case directly concern Akorn's past failures of data integrity.

While the risk of loss is reduced as to documents already produced, granting Lead Plaintiffs' request would minimize any concern in light of the nature of Akorn's planned Merger. This Merger, coupled with the likely departure of key Akorn executives relevant to this case, creates a reasonable concern that evidence may be lost, despite best efforts to preserve them. *See In re Royal Ahold N.V. Sec. Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004). Faced with Akorn's shifting corporate landscape and concerns about evidentiary loss that are by no means speculative, Lead Plaintiffs should not be required to rely "on the assurances of counsel that relevant evidence will be preserved." *Id*. The early production of core documents is the preferred method to ensure that such materials are available for the prosecution of the action. *See Lernout*, 214 F. Supp. 2d at 109.

Moreover, lifting the stay will allow the case to more quickly proceed to deposition discovery and a better chance that key witnesses are still employed by Akorn. Simply put, no statutory provision or preservation order can preserve documents after they have been destroyed or lost. Accordingly, in addition to preventing prejudice to Lead Plaintiffs, partial relief from the PSLRA stay would ensure that evidence is preserved and is consistent with the statute's goals.

### E. Limited Relief Will Promote Efficiency

Lifting the discovery stay will promote efficiency and case management, and meaningfully advance this case toward resolution. Courts recognize that such case management considerations should be included when determining whether to modify the stay. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (courts may consider factors such as case management); *Royal Ahold*, 220 F.R.D. at 252 n.15 (lifting stay where, among other factors, defendants and other litigants in other proceedings were engaging in discovery). Akorn has already produced over 3 million documents to Fresenius in the Delaware Litigation. Lead Plaintiffs anticipate its consolidated and amended complaint will incorporate many of the briefing and materials revealed during the Delaware Litigation.

## IV. CONCLUSION

For the reasons stated above, partially lifting the PSLRA's discovery stay is necessary to prevent undue prejudice to Lead Plaintiffs and the prospective class. Further, such relief would promote efficiency in this litigation and ensure that relevant evidence is preserved during the potential Merger. Given that Lead Plaintiffs only seek materials already gathered, reviewed and produced in the Delaware Litigation, the requested relief imposes no undue burden on Defendants.

Finally, granting limited relief from the stay is consistent with the mandate and purposes behind the PSLRA.

DATED: June 14, 2018

Respectfully Submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
Vincent R. Cappucci  (*admitted pro hac vice*)
Arthur V. Nealon  (*admitted pro hac vice*)
Robert N. Cappucci  (*admitted pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10017
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
anealon@entwistle-law.com
rcappucci@entwistle-law.com

*Lead Counsel for the Class*

Avi Josefson
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
875 North Michigan Avenue
Suite 3100
Chicago, Illinois 60611
Telephone:  (312) 373-3880
Facsimile:  (312) 794-7801
avi@blbglaw.com

-and-

John Rizio-Hamilton (*admitted pro hac vice*)
Abe Alexander (*admitted pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
johnr@blbglaw.com
abe.alexander@blbglaw.com

*Liaison Counsel for the Class*

14

**CERTIFICATE OF SERVICE BY ELECTRONIC MEANS**

I, Andrew J. Entwistle, one of the attorneys for Lead Plaintiffs, hereby certify that on June 14, 2018, service of the foregoing Lead Plaintiffs' Memorandum of Law in Support of Motion for Limited Relief From the PSLRA Discovery Stay was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle