**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE AKORN, INC. DATA INTEGRITY SECURITIES LITIGATION | Civ. A. No. 1:18-cv-01713<br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL**
**OF FORM OF CLASS NOTICE, AND A HEARING DATE**
**<u>FOR FINAL APPROVAL OF SETTLEMENT</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

    A.    Summary of the Settlement Terms ............................................................ 2

    B.    The Settlement Meets the Applicable Standard for Preliminary Approval ........... 5

    C.    The Settlement Class is Properly Certifiable Under Rule 23(a). ........................ 6

    D.    Lead Plaintiffs' Proposed Schedule for Approval is Appropriate ....................... 7

II.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY .............. 7

    A.    Akorn's Regulatory Issues, Failed Merger and Financial Problems .................... 7

    B.    Akorn's Dire Financial Condition ......................................................... 9

    C.    Procedural History of the Action ......................................................... 10

    D.    The Extensive and Hard-Fought Settlement Negotiations.................................. 11

ARGUMENT ......................................................................................................... 11

III.   THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY
      APPROVAL UNDER RULE 23(e)........................................................................ 11

    A.    The Proposed Settlement Discloses No Reason to Doubt its Fairness, Has No
         Obvious Deficiencies and is Well Within the Range of Possible Approval......... 13

        1.    Lead Plaintiffs and Plaintiffs' Counsel Adequately Represented the
             Settlement Class................................................................... 13

        2.    The Settlement Resulted From Arm's-Length Negotiations ....................... 14

        3.    The Settlement Benefits Are Fair, Reasonable and Adequate Given
             the Costs, Risks, and Delay of Further Litigation.................................... 15

        4.    Defendants Have Limited, If Any, Ability to Fund a Greater
             Settlement ....................................................................... 17

    B.    The Settlement Treats All Settlement Class Members Fairly and Does Not Grant
         Preferential Treatment to Class Representatives or Segments of the Class.......... 18

    C.    The Anticipated Request for Attorneys' Fees is Reasonable................................ 20

IV.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
      PURPOSES IS APPROPRIATE ......................................................................... 21

i

V.      NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ....................... 22

VI.     PROPOSED SCHEDULE ............................................................................................. 23

CONCLUSION.................................................................................................................................. 24

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*,
  No. 15-cv-09025, 2019 WL 2366475 (N.D. Ill. May 29, 2019) .................................. 5, 15

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 21, 22

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ....................................................................... 12, 13

*Beesley v. Int'l Paper Co.*, No. 3:06–cv–703,
  2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ....................................................... 21

*CE Design Ltd. v. King Supply Co., LLC*,
  No. 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012),
  *aff'd* 791 F.3d 722 (7th Cir. 2015) ................................................................ 18

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
  No. 1:11-cv-08332-AJS, 2014 WL 12767763 (N.D. Ill. Aug. 5, 2014) ......................... 20

*Goldsmith v. Tech. Solutions Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ......................................... 12

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No-12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ....................... 13, 14, 17

*In re Career Educ. Corp. Sec. Litig.*,
  No. 03 C 8884, 2008 WL 8666579 (N.D. Ill. June 26, 2008) ......................................... 15

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) .................................................................. 20

*In re Gen. Motors Corp. Engine Interchange Litig.*,
  594 F.2d 1106 (7th Cir. 1979) ........................................................................ 12

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
  314 F.R.D. 580 (N.D. Ill. 2016) ....................................................................... 13

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  No. 09 C 7666 (N.D. Ill. Jan. 22, 2014) ............................................................ 20

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................... 20

*Isby v. Bayh,*
   75 F. 3d 1191 (7th Cir. 1996) ........................................................................ 12

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*
   264 F.R.D. 438 (N.D. Ill. 2009) .................................................................... 13

*Mangone v. First USA Bank,*
   206 F.R.D. 222 (S.D. Ill. 2001) .................................................................... 14

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ......................... 17

*Susquehanna Corp. v. Korholz,*
   84 F.R.D. 316 (N.D. Ill. 1979) ...................................................................... 14

*United States v. Capital Tax Corp.,*
   No. 04 C 4138, 2007 WL 2772936 (N.D. Ill. Sept. 18, 2007) ......................... 18

*United States v. T.L. Diamond & Co., Inc.,*
   No. 08-3079, 2008 WL 4329921 (C.D. Ill. Sept. 17, 2008) ............................ 18

*Williams v. Quinn,*
   748 F. Supp. 2d 892 (N.D. Ill. 2010) ............................................................ 12

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ passim

**Other Authorities**

*Manual for Complex Litigation,*
   (Fourth) (2004) ............................................................................................. 12

*Newberg on Class Actions*
   (Fourth) (2002) ........................................................................................ 12, 13

Court-appointed Lead Plaintiffs Gabelli & Co. Investment Advisors, Inc. and Gabelli Funds, LLC (collectively, "Lead Plaintiffs"), on behalf of themselves and the Settlement Class,[1] respectfully submit this Memorandum of Law in support of their motion (the "Motion"), pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" and each a "Rule"), for entry of the [Proposed] Order Preliminarily Approving Settlement, Approving Form of Class Notice, and Setting Hearing Date for Final Approval of Settlement (the "Preliminary Approval Order"), attached as Exhibit A to the Stipulation. The Motion is unopposed by the Defendants.[2]

## I.    INTRODUCTION

Lead Plaintiffs are pleased to move for preliminary approval of this hard-fought, multi-faceted Settlement with Defendants that, if approved by the Court, will provide between approximately $53.6 million and $155.4 million in recovery to the Settlement Class, depending on the ultimate value of the approximately 8,735,705 shares of Akorn common stock and the up to $60.0 million Contingent Value Rights ("CVRs") distributed as part of the settlement consideration.

Structuring a settlement here was particularly challenging given Akorn's: precarious financial condition; restrictions on its ability to pay imbedded in various debt instruments; multiple consecutive quarters of operating losses; the "overhang" of the damages litigation by Fresenius Kabi AG ("Fresenius") in Delaware; risk that Akorn will be unable to renegotiate or refinance its

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings set forth in the Stipulation and Agreement of Settlement, dated August 9, 2019 (the "Stipulation"). The Stipulation and its Exhibits are annexed as Exhibit 1 to the Declaration of Andrew J. Entwistle, dated August 9, 2019 ("Entwistle Decl."), filed contemporaneously herewith.

[2] "Defendants" are Akorn, Inc. ("Akorn" or the "Company") and Rajat Rai, Duane A. Portwood, Alan Weinstein, Ronald M. Johnson, and Brian Tambi (collectively, the "Individual Defendants").

agreements with creditors by the end of this year; and overarching risk of bankruptcy – the filing of which would mean the class would recover little or nothing even if it prevailed on its claims.

As described below, the Settlement provides: (i) an immediate cash payment that delivers the maximum available current recovery given Akorn's existing limited ability-to-pay; (ii) protection for Settlement Class Members from the risk of bankruptcy that would likely wipe out the Settlement Class's recovery; and (iii) potential "upside" participation if the Company's turnaround strategy is successful. The Settlement is carefully structured to give Akorn the ability to negotiate with its creditors in a way that mitigates the risk of pushing the Company into insolvency. Lead Counsel, Lead Plaintiffs and their experts received various presentations from Akorn's financial and restructuring advisors during the mediation process in order to fully assess Akorn's financial condition, ability to pay and turnaround strategy. For these reasons and the others set forth below, the Settlement meets all the criteria for approval under Rule 23(e).

### A.    Summary of the Settlement Terms

Under the terms of the Settlement (the "Settlement Terms"), the Settlement Class will receive recovery consisting of cash, common stock and contingent value rights, including:

1.    **Cash:** Up to $30.0 million upon final approval, consisting of 100% of the proceeds from Defendants' primary and excess director and officer (D&O) insurance policies (subject to a small defense cost reserve that reverts to the Settlement Class shortly after the Effective Date if unused) for distribution to Settlement Class Members following final approval of the Settlement by the Court;

2.    **Common Stock:** Up to approximately 8,735,705 shares of Akorn common stock. The closing price of Akorn's common stock has fluctuated between $2.70 to $7.49 per share since the Delaware Court of Chancery's (the "Chancery Court") unfavorable October 1, 2018 decision allowing Fresenius to terminate its merger agreement with Akorn. Using this price range the stock would be valued at between $23.6 million and $65.4 million. However, the stock closed at $12.98 on the last trading day before the Fresenius decision – which would value the shares at $113.4 million. While Lead Plaintiffs do not use that value in the notice materials to the class, it is indicative of the potential

upside if Akorn both successfully completes negotiations with creditors and successfully executes its turnaround plan. The common stock component consists of:

- Approximately 6,486,375 shares upon final approval of the Settlement by the Court to be escrowed, if possible, for distribution to Settlement Class Members (or sold and the cash proceeds distributed);

- Approximately 2,249,330 shares to be issued to the Settlement Class (or sold and the cash proceeds distributed) between the Effective Date and December 31, 2024, inclusive, as the shares become available due to the expiration of out-of-the-money options issued under Akorn compensation plans;

3. **Contingent Value Rights:** CVRs issued by Akorn that entitle holders to the following:

- **Cash Payments:** Annual cash payments over the CVRs' five-year term in an amount for any year equal to 33.3% of Akorn's "Excess EBITDA" (i.e., earnings before interest, taxes, depreciation and amortization (EBITDA) above the amount of EBITDA required to meet a 3.0x net leverage ratio, assuming a $100.0 million minimum cash cushion, before any such CVR payment is triggered), if any, for any such year. To the extent such annual payments are triggered under the CVRs, they are capped at an aggregate of $12.0 million per year and $60.0 million in the aggregate during the term of the CVRs. If cumulative annual payments from the CVRs after 5 years are less than $60.0 million, the term of the CVRs would be extended for up to two (2) years.

- **Change in Control Payment or Bankruptcy Protection Claim:** Either (a) a cash payment to the holders of the CVRs in the aggregate amount of $30.0 million upon certain change of control transactions during the term of the CVRs, provided the senior obligations and other debt for borrowed money of Akorn and its subsidiaries are repaid in full in cash; or (b) a general unsecured claim on account of all CVRs in the aggregate amount of $30.0 million if the Company is the subject of a voluntary or involuntary bankruptcy filing during the term of the CVRs (which general unsecured claim will be subordinated to certain debt obligations of Akorn and its subsidiaries in accordance with the terms of the CVR Agreement(as defined below)). Following the making of the Change in Control Payment or receipt by the CVR holders of the Bankruptcy Claim, no further annual

3

payments shall be required. Additionally, CVR holders shall not be entitled to receive both the Change in Control Payment and the Bankruptcy Claim.

The CVRs will be distributed to Settlement Class Members and Akorn has agreed to work in good faith to cause the CVRs to be traded on the NASDAQ Global Market or another national securities exchange. The securities will be distributed *pro rata* to Settlement Class Members in a form and denominations to be determined in the sole discretion of Lead Counsel in consultation with Akorn, the Claims Administrator, and a trustee for the CVRs to be selected by Akorn (the "Trustee"), in consultation with Lead Counsel.

The operation of the CVRs will be governed by the Contingent Value Rights Agreement (the "CVR Agreement") between Akorn and the Trustee. A form of the CVR Agreement is attached as Exhibit C to the Stipulation and is subject to modification as set forth in the Stipulation.

In its July 30, 2019 Form 8-K filed with the Commission disclosing the terms of the non-binding agreement in principle entered into by the Litigation Parties to the market and investors, Akorn recorded an estimated charge and corresponding liability of $74 million associated with such non-binding agreement in principle, as required by generally accepted accounting principles.

Assuming the Court grants Lead Counsel's anticipated motion for an award of attorneys' fees and reimbursement of litigation expenses that will accompany Lead Plaintiffs' motion for final approval and judgment, the Settlement Class's recovery from the cash, common shares and CVRs will be subject to: (i) an award of attorneys' fees to Plaintiffs' Counsel of up to 25% (payable in kind in the form of up to 25% of each of the cash, Settlement Shares (up front and as they become available), and CVRs); (ii) reimbursement of litigation expenses of up to $1.5 million; and (iii) payments of the costs of notice and administration. Initial notice costs have been capped by agreement at $150,000 with the proposed Claims Administrator.[3]

---

[3] *See* Declaration of Robert Cappucci Concerning Lead Plaintiffs' Bidding Procedures for Selection of Claims Administrator, dated August 9, 2019, attached as Exhibit 2 to the Entwistle Decl.

**B.     The Settlement Meets the Applicable Standard for Preliminary Approval**

At the preliminary approval stage, the Court must determine whether "giving notice of the proposed Settlement to the Settlement Class is justified by the Parties' showing that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the Settlement Class for purposes of judgment on the proposal" under Rule 23(a). *Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-cv-09025, 2019 WL 2366475, at *1 (N.D. Ill. May 29, 2019). Here the Court will be able to approve the Settlement at or after the Settlement Hearing because the Settlement is clearly fair, reasonable, adequate and in the best interest of the Settlement Class under the factors set forth in Rule 23(e)(2) and the Settlement Class is properly certified under Rule 23(a):

- **Lead Plaintiffs and Plaintiffs' Counsel have adequately represented the class.** Lead Plaintiffs have actively participated, consulted with and/or directed Plaintiffs' Counsel at every stage of the Action. Plaintiffs' Counsel has in turn spent thousands of hours vigorously litigating the Action on behalf of the Settlement Class, including investigating the claims, drafting the complaints, reviewing documents, moving for class certification and negotiating with Defendants' Counsel and structuring this complex settlement;

- **The Settlement was negotiated at arm's-length**. The Settlement Terms are the result of three months of intensive arm's-length negotiations, including two in-person mediation sessions under the supervision of former United States District Judge Layn R. Phillips, a nationally-recognized expert in mediating large class action settlements;

- **The relief provided for the Settlement Class is adequate**, taking into account:

    (i)     *The costs, risks and delay of trial and appeal is substantial*. Defendants and highly-skilled Defendants' Counsel vigorously contest certain elements of the Lead Plaintiffs' claims under the Exchange Act. While Lead Plaintiffs believe they would ultimately prevail at trial, there is a material risk of an adverse ruling or result, and additional costly and lengthy litigation will erode or eliminate Akorn's limited insurance coverage. Akorn's challenging financial position creates an added risk that the Company would ultimately be unable to satisfy a significant judgment;

5

(ii)     *The proposed method of class distribution is effective*. Lead Plaintiffs have requested that the Court approve JND Legal Administration ("JND"), an experienced claims administrator, to direct the notice, claim and distribution process. JND's role as Claims Administrator will last for the duration of the five (5) years that additional common shares or their cash proceeds may be distributed to the Settlement Class. And Lead Counsel has worked closely with an expert to develop an appropriate plan of allocation for each component of the Settlement Terms that is fair to Settlement Class Members;

(iii)    *Plaintiffs' Counsel's anticipated request for attorneys' fees will be reasonable*. Plaintiffs' Counsel intends to request attorneys' fees equal to no more than 25% of each component of the Settlement Class's recovery in kind. That is, 25% of the cash component, the stock component and the CVRs.

(iv)    *The agreements associated with the Settlement are necessary and appropriate*. The approximately 70-page Stipulation appropriately sets out the Parties' rights and obligations under the Settlement.   The approximately 30-page CVR Agreement is necessary to govern the operation of the CVRs and effectively protects the holders' rights. And the Litigation Parties' agreement permitting Defendants to terminate the Settlement in the event that Settlement Class Members who collectively purchased more than an agreed upon number of shares eligible to participate in the Settlement exclude themselves is necessary and appropriate in order to protect Defendants from such financial exposure from the Opt-Out litigants as would render the resolution of the class claims economically irrational. If exercised, it will place the Parties in the positions they occupied before the Settlement.

- **The Settlement treats Settlement Class Members equitably relative to each other**. The plan of allocation set forth in the Notice and for which the Lead Plaintiffs will seek the Court's approval at the Settlement Hearing is designed to treat each Settlement Class Member equally, and does not favor any one Settlement Class Member over another, including Lead Plaintiffs.

## C.    The Settlement Class is Properly Certifiable Under Rule 23(a).

As demonstrated in Lead Plaintiffs' July 5, 2019 motion for class certification (ECF No. 113) incorporated herein by reference (and attached as Exhibit 3 to the Entwistle Decl.), the Action easily satisfies Rule 23(a)'s requirements for class certification:   numerosity, commonality,

typicality and adequacy. Moreover, Defendants have stipulated to certification of the Settlement Class for purposes of the Settlement.

### D. Lead Plaintiffs' Proposed Schedule for Approval is Appropriate

Lead Plaintiffs propose a schedule – incorporated into the Preliminary Approval Order and Notice – that is appropriate to give Settlement Class Members the opportunity to evaluate the Settlement and to object, exclude themselves, or file a Proof of Claim Form to participate in the recovery:

- August 26, 2019: notice of presentment of motion for preliminary approval;

- Notice mailed and published within 20 and 30 business days, respectively, of preliminary approval;

- Motions for final approval and an award of attorneys' fees no less than 35 days before the Settlement Hearing;

- Objections and requests for exclusion due no less than 21 days before the Settlement Hearing;

- Settlement Hearing approximately 99 days from preliminary approval; and

- Proof of Claim Forms postmarked 120 days following the mailing of Notice.

For the foregoing reasons and those set forth below, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, including setting a date for the final Settlement Hearing.

## II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Akorn's Regulatory Issues, Failed Merger and Financial Problems

Akorn is a pharmaceutical company that develops, manufactures and markets generic pharmaceuticals, specializing in difficult-to-manufacture and high-margin sterile and non-sterile dosage forms. Plaintiffs allege that Akorn, once a rapidly growing, rising star in its industry, is now beset by a host of quality-control issues at the core of its operations that have imperiled its

financial position and impacted its ability to bring new products to market. Plaintiffs allege in the Action that these quality issues (and the attendant impact they would have on Akorn's product pipeline) were known to Defendants by the beginning of the Class Period on November 3, 2016, when Defendant Rai (Akorn's then-CEO) assured investors that "no remediation" was required in response to FDA inspectional observations concerning Akorn's Decatur facility (the Company's largest manufacturing site).

While Akorn allegedly continued to mislead investors concerning the extent of its systemic quality problems, Fresenius, a German pharmaceutical giant, entered into an April 24, 2017 Agreement and Plan of Merger (the "Merger Agreement") to acquire Akorn for $34.00 per share (the "Merger").[4] However, the truth regarding Akorn's data integrity and quality problems was ultimately revealed through a series of partial corrective disclosures that caused a massive decline in Akorn's stock price and the 2018 failure of the Merger:

- On February 26, 2018, Fresenius announced it was "conducting an independent investigation, using external experts, into alleged breaches of FDA data integrity requirements relating to product development at Akorn, Inc." Akorn's stock price declined 38.4% following the announcement;

- On April 22, 2018, Fresenius announced it was terminating its Merger Agreement with Akorn due to Akorn's widespread regulatory violations. This disclosure caused Akorn's share price to drop an additional 33.8%;

- Following an adverse decision in Akorn's breach of contract suit against Fresenius in the Chancery Court holding that Fresenius had validly terminated the Merger because Akorn has "serious and pervasive data integrity problems that rendered Akorn's representations about its regulatory compliance sufficiently inaccurate," Akorn's stock price fell an additional 58.7%;[5]

---

[4] This represented a substantial premium over the $25.22 per share closing price on the day before news of merger discussions was reported.

[5] On December 7, 2018, the Delaware Supreme Court upheld the Chancery Court's decision, causing Akorn's stock price to fall by an additional 23.8%. Lead Plaintiffs do not allege this to be further corrective of Defendants' fraud.

- On January 9, 2019, Akorn disclosed it received a Warning Letter from the FDA relating to an inspection of its Decatur, Illinois facility, causing Akorn's stock price to fall by still another 11.6%.

In total, in the wake of the revelation of Akorn's systemic data integrity problems, Akorn's share price dropped nearly 90% from February 25, 2018 to $3.48 per share on January 9, 2019. Akorn has continued to receive admonishment from the FDA regarding the same and similar issues, including most recently the receipt of a Warning Letter on June 13, 2019 concerning its facility in Somerset, New Jersey.

### B.    Akorn's Dire Financial Condition

Today, Akorn is in dire financial condition. It has not earned a profit in two years, and its recent earnings announcement reported a net loss of $112.0 million for second-quarter of 2019 (including the $74 million charge for the Settlement). Moreover, while there has been some positive news in terms of new product approvals that indicates Akorn's "turnaround plan" may succeed and the Company may return to profitability, there remain several major overhangs, including:

- The continuing costs of remediating its FDA compliance issues, which the Chancery Court found likely to be in the hundreds of millions of dollars;

- A counterclaim by Fresenius for damages in the Chancery Court for more than $100 million;

- The fact Akorn has not yet been able to refinance or renegotiate more than $840 million in debt, which must be completed before year-end; and

- The ongoing bankruptcy risk stemming from the Fresenius suit, the debt renegotiation and this and related litigation.

Significantly, the terms of Akorn's debt severely restrict its ability to use cash on hand and other assets to fund a settlement or to pay a judgment in the Action.

### C.     Procedural History of the Action

This Action was commenced on March 8, 2018, by the timely filing of the initial class action complaint in this Court.  (ECF No. 1).  On May 31, 2018, the Court appointed Gabelli & Co. Investment Advisors, Inc. and Gabelli Funds, LLC as Lead Plaintiffs, and appointed the law firms of Entwistle & Cappucci LLP as Lead Counsel for the putative Settlement Class and Bernstein Litowitz Berger & Grossmann LLP as local Liaison Counsel.  (ECF No. 37).

On April 22, 2019, Lead Plaintiffs filed the Second Amended Complaint (ECF No. 101) which alleges claims under (i) Section 10(b) of the Exchange Act and Rule 10b-5 against Defendants; and (ii) Section 20(a) of the Exchange Act against the Individual Defendants.  The Second Amended Complaint alleges fraudulent conduct arising from Defendants' alleged material misrepresentations and omissions during the Class Period that, among other things, Akorn was in compliance with FDA data integrity and manufacturing regulations and, consequently, valuable drugs in the Company's product pipeline would soon obtain FDA approval.  The Second Amended Complaint alleges that Defendants deliberately misrepresented and omitted materials facts in order to, among other things, attempt to sell the Company to Fresenius.

Discovery in the case commenced in December 2018.  To date, Akorn has produced over 3.6 million documents (more than twelve million pages), including transcripts and exhibits of all depositions taken in the Merger litigation in the Chancery Court, many of which were germane to the allegations in this Action.  Lead Plaintiffs obtained an assented order allowing them to treat those depositions as having occurred in this Action, thereby avoiding duplicating the efforts of Fresenius's counsel with respect to establishing certain evidentiary points.   (ECF No. 86). Supplemental discovery efforts have been ongoing and Lead Counsel spent significant time with their experts developing class-wide damage theories in connection with making Lead Plaintiffs' motion to certify the class.  Defendants propounded document requests on Lead Plaintiffs on

January 14, 2019.  Lead Plaintiffs served responses on February 13, 2019 and proceeded to collect, review and prepare for production over fifteen thousand of their internal documents.  The discovery taken to date enabled Lead Counsel and Lead Plaintiffs to thoroughly evaluate the strengths and weaknesses of the case.

### D. The Extensive and Hard-Fought Settlement Negotiations

On May 3, 2019, in light of Akorn's challenging financial circumstances and the multi-layered risk for both sides of continuing costly litigation, counsel for Lead Plaintiffs and Defendants participated in an in-person mediation session before Judge Phillips to explore a negotiated settlement.  The parties exchanged two rounds of detailed confidential mediation statements in advance of the mediation.  Akorn and its restructuring and financial advisors also made various presentations related to its ability to pay and related issues.  Although no settlement was reached at the mediation session or a follow-up session on May 21, 2019, Lead Counsel and Defendants' Counsel continued to negotiate with the assistance of Judge Phillips.

While the settlement negotiations were ongoing, on July 5, 2019, Lead Plaintiffs moved to certify this case as a class action pursuant to Rules 23(a) and 23(b)(3).

Following months of intensive negotiations, in light of the Akorn's precarious financial condition, the ongoing bankruptcy risk, the risks that Lead Plaintiffs would fail to prove elements of their case at trial, and the significant risk that Akorn would not be able to satisfy even a modest judgment in the future, Lead Plaintiffs and Lead Counsel determined to settle the Action.

## ARGUMENT

## III. THE SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) requires judicial approval for a compromise of claims brought on a class-wide basis.  Judicial policy strongly favors settlement of class actions, particularly in class actions where

substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby v. Bayh,* 75 F. 3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.") (citation omitted); *Williams v. Quinn,* 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (same); *see also Newberg on Class Actions*, § 11.41 (Fourth) (2002) ("*Newberg*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  For this reason, "the federal courts look with great favor upon the voluntary resolution of litigation through settlement."  *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995).

A district court's review of a proposed class action settlement is a two-step process.  *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (citation omitted).  *First*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1); *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1124 (7th Cir. 1979). *Second*, after notifying the class of the settlement and holding a hearing to consider the fairness of settlement, the Court issues a "final approval" order.  *See* Fed. R. Civ. P. 23(e)(2). *Manual for Complex Litigation*, (Fourth) § 21.634 (2004).  This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the Court to fulfill its oversight role on behalf of the class members' interests.  *See Newberg*, § 11.25.

Rule 23(e), as amended,[6] among other things, specifies that the crux of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties'

---

[6] The amendment to Rule 23 became effective on December 1, 2018.  The amendment does not negate the Seventh Circuit precedent cited herein, as the goal of the 2018 amendment was "not to displace any factor [developed by the circuits], but rather to focus . . . on the core concerns . . . that should guide the decision whether to approve the propos[ed settlement]."  Rule 23, *Advisory Committee's Note to 2018 Amendments; see also Hale v. State Farm Mut. Auto. Ins. Co.*, No-12-0660-DRH, 2018 WL 6606079 at *2 (S.D. Ill. Dec.

showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court should grant preliminary approval where, as here:

- the proposed settlement discloses no reason to doubt its fairness;

- has no obvious deficiencies;

- does not improperly grant preferential treatment to class representatives or segments of the class;

- does not grant excessive compensation to attorneys; and

- appears to fall within the range of possible approval.

*Newberg*, § 13:12; *see also Armstrong*, 616 F.2d at 314 (the question at the preliminary approval stage is "whether the proposed settlement is 'within the range of possible approval'"); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016) (same); *Kaufman v. Am. Express Travel Related Servs. Co., Inc.* 264 F.R.D. 438, 447 (N.D. Ill. 2009) (a relevant consideration is whether the settlement "has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class") (citation omitted).

**A.      The Proposed Settlement Discloses No Reason to Doubt its Fairness, Has No Obvious Deficiencies and is Well Within the Range of Possible Approval**

**1.      Lead Plaintiffs and Plaintiffs' Counsel Adequately Represented the Settlement Class**

Lead Counsel, at the direction of Lead Plaintiffs, conducted an extensive factual investigation of the alleged wrongdoing. In advance of filing the first consolidated amended complaint, Plaintiffs' Counsel contacted more than one hundred former Akorn personnel and

---

16, 2018) (the considerations set forth in the newly amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit.").

conducted more than fifty confidential telephonic witness interviews. At the time the Litigation Parties agreed to the Settlement, Lead Counsel had conducted a detailed review of the over 3.6 million documents produced by the Defendants, utilizing targeted searches and artificial intelligence to prioritize the review. Further, Lead Counsel's factual investigation was aided by the extensive record from the related Delaware Litigation, which included over 1,500 joint trial exhibits, dozens of deposition transcripts, a five-day bench trial, and a 247-page opinion by the Chancery Court.

Lead Counsel also collected, reviewed, and prepared for production over 15,000 documents from the internal files of Lead Plaintiffs. Accordingly, when Lead Plaintiffs agreed to the terms of the Settlement, they were well-informed of the strengths and weaknesses of the case, and the inherent risks of continued litigation. Additionally, Lead Plaintiffs, who were present at both mediations and actively involved in settlement negotiations, are sophisticated investors who have claims that are typical of and coextensive with those of other Settlement Class Members and worked to obtain the largest possible recovery from Defendants. *Hale*, 2018 WL 6606079 at *3 (Lead Plaintiffs' investment of significant time and resources, as well as counsel's extensive experience in litigating similar actions, favors approval).

### 2. The Settlement Resulted From Arm's-Length Negotiations

The Settlement enjoys a presumption of fairness if the Court finds the settlement is the result of arm's-length negotiations between counsel experienced in similar litigation. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) ("a settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate") (*citing Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979))

This Settlement embodies all of the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been actively litigating this Action since March 2018. Lead Counsel's settlement posture was informed by, among other things, the significant factual investigation undertaken, aided by the extensive record in the Delaware trial, research into relevant legal issues, ongoing discovery efforts and research and briefing on class certification and expert analysis and due diligence on Akorn's ability to pay, precarious financial position and the risk of insolvency. Armed with this knowledge, Lead Counsel – who has extensive experience litigating securities class actions, including against companies in bankruptcy or in a work-out setting – engaged in intensive negotiations seeking to achieve the best possible result for the Settlement Class, while at the same time accounting for the risks of continued litigation.

*Second*, the Settlement was reached following extensive arm's-length negotiations with the assistance of a highly experienced mediator. The arm's-length nature of the settlement negotiations, and the involvement of an experienced mediator, like Judge Phillips, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2008 WL 8666579, at *3 (N.D. Ill. June 26, 2008) (settlement "resulted from arms-length negotiations and voluntary mediation between experienced counsel").

### 3. The Settlement Benefits Are Fair, Reasonable and Adequate Given the Costs, Risks, and Delay of Further Litigation

Following the amendments to Rule 23, the Court must consider whether it is likely to be able to approve the Settlement as fair, reasonable, and adequate, taking into account the costs, risks, and delay of trial and appeal. Rule 23(e)(2)(i).[7]

---

[7] Some courts have continued to apply the "range of possible approval" test since the Rule 23(e) amendments took effect. *See, e.g.*, *Abante Rooter & Plumbing*, 2019 WL 2366475, at *1 ("The Court preliminarily finds that the Settlement is fair, reasonable, and adequate, and within the range of possible approval"). The Settlement also satisfies this older standard.

Here the proposed Settlement provides for a recovery of approximately $53.6 million and an overall possible recovery of up to $155.4 million. Lead Plaintiffs' damages consultant estimates aggregate damages in this case of approximately $1.1 billion, assuming ultimate success on the merits of all claims. However, Defendants assert that damages, if any, are much smaller. Accordingly, the Settlement represents approximately 4.8% to 14.1% of the estimated damages, well within the normal range of settlements for securities class actions even where the corporate defendant is not facing financial challenges.

Importantly, the damages estimate assumes that the Lead Plaintiffs would be able to prove damages based on *all four* alleged corrective disclosures. Lead Plaintiffs recognize, however, that damages relating to certain of the alleged corrective disclosures would have been difficult to prove had the Action continued. If Defendants succeeded in having damages relating to one or more of the corrective disclosures dismissed at summary judgment or succeeded in proving that Lead Plaintiffs had not adequately disaggregated confounding information, damages would be reduced dramatically. In recognition of these hurdles to establishing damages and the possibility of losing several corrective disclosures, provable damages realistically could fall to a fraction of the overall loss that investors suffered. The Settlement therefore represents a significantly larger percentage of the damages than are likely to be provable. In any event, it is doubtful that Akorn could satisfy a judgment in excess of the Settlement Amount, meaning that the Settlement represents close to 100% of the damages that are actually recoverable. The proposed Settlement is therefore a substantial recovery for the Settlement Class and falls well within the range of what is fair, reasonable and adequate.

Lead Plaintiffs also acknowledge there are substantial risks in further prosecution of this Action. While they believe they would have prevailed, such an outcome was not certain and Akorn

16

was unlikely to be able to satisfy a judgment in excess of the recovery obtained by the Settlement. Indeed, to defend the Action through trial and appeal, Akorn would have exhausted much, if not all, of the Applicable Insurance Policies it is using to settle the Action, and therefore may not have been able to satisfy a judgment even equal to the cash consideration obtained by the Settlement. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *2 (N.D. Ill. Dec. 10, 2001) ("Securities fraud litigation is long, complex and uncertain.") (citation omitted); *Hale*, 2018 WL 6606079 at *4 (in addition to a "long and undoubtedly expensive trial," there is a "strong likelihood of post-trial motions and appeals.").

In light of these risks, the Court will likely be able to conclude at the final hearing that the proposed Settlement is a fair, reasonable, and adequate compromise as providing meaningful relief to the Settlement Class and in light of the risks of continued litigation. This is particularly true where, as here, Akorn is currently unable to fund a greater settlement.

### 4. Defendants Have Limited, If Any, Ability to Fund a Greater Settlement

As set forth herein, Akorn is in dire financial condition. Its balance sheet shows that Akorn is over-levered, and its Quarterly Report on Form 10-Q for each of the last two quarters has disclosed that its need either to refinance or amend its outstanding term debt "raise[s] substantial doubt about the Company's ability to continue as a going concern within one year after the date the accompanying financial statements are filed".[8] Moreover, Akorn's creditors have placed severe constraints on its ability to use cash to satisfy any litigation judgment; and the Company faces multiple related lawsuits against sophisticated, well-funded opponents, and is receiving ongoing scrutiny from its primary regulator, the FDA. Accordingly, Lead Plaintiffs do not believe that the Company could – or likely will be able to in the near future – fund a substantially greater

---

[8] Akorn, Inc., Quarterly Report (Form 10-Q) at 11 (May 9, 2019); Akorn, Inc., Quarterly Report (Form 10-Q) at 11 (August 2, 2019).

17

settlement. Nor could a substantially greater settlement be funded by insurance, as the cash portion of the Settlement represents virtually all of the remaining insurance.

The Settlement achieves as much as it can, providing the Settlement Class the maximum available current recovery, potential "upside" participation in the Company's turnaround strategy, and Akorn the ability to continue as a going concern during negotiations with its creditors while minimizing the risk of pushing the Company into immediate insolvency.

Where parties with limited ability to pay have made analogous offers, courts have found that the settlements were fair and reasonable. *See United States v. T.L. Diamond & Co., Inc.*, No. 08-3079, 2008 WL 4329921, at *2 (C.D. Ill. Sept. 17, 2008) (where there is no evidence the settling party has ability to pay more and further litigation would merely drain assets, settlement was found fair and reasonable); *CE Design Ltd. v. King Supply Co., LLC*, No. 09 C 2057, 2012 WL 2976909, at *3 (N.D. Ill. July 20, 2012), *aff'd* 791 F.3d 722 (7th Cir. 2015) (approving settlement of $200,000.00 by defendant where it was shown that his ability to pay was extremely limited); *United States v. Capital Tax Corp.*, No. 04 C 4138, 2007 WL 2772936, at *2 (N.D. Ill. Sept. 18, 2007) (where it is shown that a party "cannot pay more" the court deemed the settlement reasonable). Accordingly, this factor also supports approval.

### B. The Settlement Treats All Settlement Class Members Fairly and Does Not Grant Preferential Treatment to Class Representatives or Segments of the Class

Rule 23(e)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents an excellent result for the Settlement Class. Lead Counsel, with the assistance of a damages consultant, has proposed a plan of allocation for the Settlement proceeds (the "Plan") that ensures all Settlement Class Members will be treated equally relative to their respective losses. The Claims Administrator will process all submitted Proof of Claim Forms and

notify Settlement Class Members of deficiencies or ineligibility. It will then process responses and make distributions to eligible Settlement Class Members in the form of checks and wire transfers. The proposed Plan is thus a fair and reasonable method for allocating the Net Settlement Fund to eligible Settlement Class Members and merits approval at the Settlement Hearing.

The Court must also ultimately assess the Settlement's effectiveness in distributing relief to members of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan that Lead Plaintiffs propose provides for a straightforward and effective means of distributing the Net Settlement Fund to the Settlement Class and treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).

The Plan provides for distribution of the Net Settlement Fund to Settlement Class Members who submit a timely and valid Proof of Claim Form demonstrating that they have a loss on their transactions in Akorn common stock purchased or otherwise acquired during the Class Period. The formula to apportion the Net Settlement Fund among Settlement Class Members, which was developed in consultation with Lead Plaintiffs' damages consultant, is based on the estimated amount of artificial inflation in the price of Akorn common stock over the course of the Class Period that was allegedly caused by Defendants' misconduct. The Plan apportions the Net Settlement Fund among Settlement Class Members based on when they purchased, acquired, and/or sold their Akorn common stock, and was created without consideration of Lead Plaintiffs' individual transactions. This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner, which will include

*pro rata* distribution of cash funds, Class Settlement Shares,[9] and Settlement CVRs. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.") (citation omitted). Accordingly, the Plan applies equitably to all Settlement Class Members.

The Settlement Shares and Settlement CVRs to be issued under the proposed Settlement will be issued pursuant to an exemption from registration requirements provided by Section 3(a)(10) of the Securities Act, based on this Court's approval of the Settlement. At the final settlement hearing, the Court will be asked to consider whether the terms and conditions of the issuance of the Settlement Shares and Settlement CVRs pursuant to the terms of the Stipulation are fair to all persons and entities to whom the Settlement Shares and Settlement CVRs will be issued pursuant to the requirements of Section 3(a)(10).

### C. The Anticipated Request for Attorneys' Fees is Reasonable

The proposed Settlement permits Lead Counsel to seek reasonable compensation from the Court. The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of each individual element of the Settlement Fund (payable in-kind in the form of each of 25% of the cash, Settlement Shares, and CVRs). This amount is well within the percentages that courts in the Seventh Circuit approve in securities class actions with comparable recoveries. *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, slip op. at 2 (N.D. Ill. Jan. 22, 2014), ECF No. 693 (awarding 33 1/3% of $64 million settlement fund); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 842 (N.D. Ill. 2015) (awarding one-third of $46 million common fund); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-08332-AJS, 2014 WL 12767763 (N.D. Ill. Aug. 5, 2014)

---

[9] At any time after the Effective Date, Lead Counsel shall have the option, in its sole discretion, to direct the Escrow Agent to sell all or any portion of the Class Settlement Shares on behalf of the Settlement Class.

(awarding 30% of $60 million settlement fund); *Beesley v. Int'l Paper Co.*, No. 3:06–cv–703, 2014 WL 375432, at *1, *4 (S.D. Ill. Jan. 31, 2014) (awarding one-third of $30 million class recovery). A fee up to 25% would also reflect the substantial risks Lead Counsel undertook in pursuing the claims in this Action, its extensive litigation efforts and the excellent recovery obtained for the benefit of the Settlement Class.

Lead Counsel will also seek reimbursement of litigation expenses incurred in connection with the Action, in an amount not to exceed $1.5 million. Lead Counsel's fee and expense application will be supported by the filing of a formal motion pursuant to the Preliminary Approval Order. By granting preliminary approval of the proposed Settlement, the Court is *not* asked to now pass upon the reasonableness of any subsequent fee or expense application, which will be decided at or after the Settlement Hearing before which the Settlement Class Members will have an opportunity to comment on Lead Counsel's fee request before the Settlement Fairness Hearing.

## IV. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Settlement Class, for purposes of the Settlement only, under Rules 23(a) and (b)(3). Courts have long acknowledged the propriety of a settlement class. *See*, *e.g.*, *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 620 (noting that whether a trial would present intractable management problems is not a consideration when settlement-only certification is requested). As discussed more fully in Lead Plaintiffs' July 5, 2019 Memorandum of Law in Support of Lead Plaintiffs' Motion for Class Certification ("Class Certification Brief") (ECF No. 115),[10] this

---

[10] Attached as Exhibit 3 to the Entwistle Decl.

Action is appropriate for class treatment, and for the same reasons, settlement of the Action should proceed on a class-wide basis.

Certification of the Settlement Class is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. Here, Lead Plaintiffs have shown in their Class Certification Brief that each of these requirements are met. (Class Certification Brief at 5-9). Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of [adjudication]." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements. (Class Certification Brief at 10-19). In light of the above, added to the fact that Defendants have stipulated to class certification for settlement purposes only, the Court should certify the Settlement Class.

## V. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Lead Counsel will notify potential Settlement Class Members of the Settlement by mailing the Notice and Proof of Claim Form to all potential Settlement Class Members who can be identified with reasonable effort. The Notice will advise potential Settlement Class Members of: (i) the pendency of the Action; (ii) the essential terms and effect of the proposed Settlement; and (iii) information regarding Lead Counsel's

forthcoming motion for attorneys' fees and reimbursement of litigation expenses.[11]

The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines for opting out of the Settlement Class, for objecting to the proposed Settlement, the proposed Plan and/or the motion for attorneys' fees and reimbursement of litigation expenses, and for submitting a Proof of Claim Form. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published once in *Investors Business Daily* and transmitted once over the *PR Newswire*. In addition, the Notice and Proof of Claim Form will be made available on the internet at www.Akorn2019SecuritiesSettlement.com and Lead Counsel will display on its website a headline reflecting that a proposed Settlement has been reached and directing potential Settlement Class Members to that website.

## VI.    PROPOSED SCHEDULE

Having consulted with counsel for Defendants who report that they do not object, Lead Plaintiffs respectfully submit the following proposed schedule for the Court's consideration. The column at right lists the actual dates that would result if the Court enters the Preliminary Approval Order on the date of the hearing on August 26, 2019, and are based on a Final Approval Hearing date 99-days later on Tuesday, December 3, 2019:

| EVENT | PROPOSED DATE | PROPOSED ACTUAL DATE |
|---|---|---|
| Deadline to mail Notice and Proof of Claim Forms (the "Notice Date") | 20 business days after entry of Preliminary Approval Order | September 23, 2019 |
| Publish Summary Notice | 10 business days after Notice Date | October 7, 2019 |

---

[11] *See* Declaration of Luiggy Segura Regarding Notice and Claims Administration, attached as Exhibit 4 to the Entwistle Decl.

| EVENT | PROPOSED DATE | PROPOSED ACTUAL DATE |
|---|---|---|
| Motion for Final Approval and Motion for Award of Attorneys' Fees and Expenses | 35 calendar days before Final Approval Hearing | October 29, 2019 |
| Any Objections to Settlement or to Requested Fees and Expenses; Deadline to submit exclusion requests to Claims Administrator | 21 calendar days before Final Approval Hearing | November 12, 2019 |
| Replies in support of Motions for Final Approval and for Award of Attorneys' Fees and Expenses | 7 calendar days before Final Approval Hearing | November 26, 2019 |
| Deadline for Settlement Class Members to submit Proof of Claim forms to the Claims Administrator | Postmarked within 120 calendar days after Notice Date | January 24, 2020 |
| Final Approval Hearing | 99 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience after that date | December 3, 2019 |

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, which (i) grants preliminary approval of the Settlement among the Litigation Parties and the Settlement Class; (ii) certifies the Settlement Class for settlement purposes only; (iii) appoints Lead Plaintiffs to serve as class representatives and Entwistle & Cappucci LLP to serve as lead counsel for the class; (iv) approves the proposed form and method of giving class members notice of the action and settlement; (v) directs that notice be given to Settlement Class Members in the proposed form and manner; and (vi) sets a hearing date to consider final approval of the Settlement, plan of allocation, final judgment, and Lead Counsel's anticipated request for an award of attorneys' fees and reimbursement of litigation expenses.

Dated:  August 9, 2019

Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
**ENTWISTLE & CAPPUCCI LLP**
500 W. 2nd Street, Suite 1900-16
Austin, Texas 78701
Telephone: (512) 710-5960
aentwistle@entwistle-law.com

Vincent R. Cappucci (*admitted pro hac vice*)
Joshua K. Porter (*admitted pro hac vice*)
Brendan Brodeur (*admitted pro hac vice*)
Andrew M. Sher (*admitted pro hac vice*)
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10171
Telephone: (212) 894-7200
vcappucci@entwistle-law.com
jporter@entwistle-law.com
bbrodeur@entwistle-law.com
asher@entwistle-law.com

*Lead Counsel for the Class*

Avi Josefson
John Rizio-Hamilton (*admitted pro hac vice*)
Abe Alexander (*admitted pro hac vice*)
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
875 North Michigan Avenue
Suite 3100
Chicago, Illinois 60611
Telephone:  (312) 373-3880
Facsimile:  (312) 794-7801
avi@blbglaw.com
johnr@blbglaw.com
abe.alexander@blbglaw.com

*Liaison Counsel for the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 9, 2019, I caused the foregoing memorandum of law to be served on all counsel of record via the Court's ECF system.

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
